EDWARD G. PARKER *vs.* SAMUEL P. BENNETT & another.

If a deed of a lot of land situated between R. and S. Streets in a city describes the granted premises by metes and bounds, and refers to a recorded plan for a full view and description thereof, and adds, " Said lot is approached from S. Street by a passage, laid down on said plan, together with all the buildings standing on the premises, and all rights of way, passage and drainage belonging to the above estate in said passage," and the passage from S. Street is laid down on the plan and is sufficient to afford access to the lot,

the deed will not include, as appurtenant to the granted premises, a right to use another passage which is not laid down on the plan, leading to R. Street, and which is owned by the grantor; nor can such right be established by proof that the grantor has laid a drain from the granted premises through such passage, or that he purchased the passage with the purpose of using it as a way to the granted premises, and for a time permitted the tenants of the granted premises so to use it.

BILL IN EQUITY praying for an injunction to restrain the defendants from erecting a fence across a passage.

The case was referred to a master, whose report was agreed to be taken as a statement of facts, upon which the decision of the chief justice, before whom the case was heard, should be final. The chief justice decided that the plaintiff was not entitled to the use of the passage in question, either by prescription or dedication ; and the question whether the right to the use of the passage passed as appurtenant to the estate owned by the plaintiff, by the deeds thereof, was reserved for the determination of the whole court. The master found that the passage leading to Southac Street was ten feet wide, quite steep, and that it was difficult for the tenants of the Primus Hall estate (so called) to carry wood and coal over it. The other facts are sufficiently stated in the opinion.

*F. O. Prince,* for the plaintiff.

*J. Codman,* for the defendants.

HOAR, J. From the facts presented by the master's report, and the decision by the chief justice of the questions raised upon it, agreed by the parties to be final and conclusive, but a single question remains for the consideration of the court. That question in substance is, whether R. W. Holman, by his deed January 19, 1847, to Arthur Pickering, under whom the plaintiff claims, conveyed the right of way in controversy over the land which now belongs to the defendants.

The plaintiff's estate is known as lot No. 6 of the Primus Hall estate, situated between Southac and Revere Streets in Boston, and accessible by a passage way, not convenient for some purposes, but, so far as the evidence shows, sufficient, leading from Southac Street and appurtenant to the estate. The deed from Holman to Pickering conveyed lot No. 6 by metes and bounds, referring to a recorded plan for a full view

and description of the premises, and contains this clause : " Said lot 6 is situated in the rear of Southac Street, . . . . and is approached from said Southac St. by a passage way about ten feet wide also laid down on said plan, together with all the buildings standing on the premises, and all rights of way, passage and drainage belonging to the above estate in said passage way." It also refers to a deed from Jonas W. Clark to Holman of July 1, 1846, for a further description, reciting that the premises conveyed are the same described in that deed.   On referring to the deed from Clark to Holman, the boundaries of the land appear to be the same, and the only difference between the two deeds is, that Clark's deed conveys all rights of way, passage and drainage in the passage way from Southac Street " or otherwise."   But as at the date of that deed there were no other rights of way appurtenant to the estate, we do not see that the words " or otherwise " add anything to the effect of the conveyance.

The land of the defendants, over which the plaintiff claims a right of way, is not laid down on the recorded plan as a passage way.   It was a strip of land nine feet wide, and extending one hundred feet from Revere Street to the land of the plaintiff, laid out by one Wingate, who owned it in fee, as a passage way for the benefit of lands belonging to him on each side of it.   On the 8th of October 1846 Wingate granted one of the lots adjoining it to Levi McLane, and bounded it on the passage way, " forever to be kept open," with a recital that " said passage way is to be used in common by all abutters thereon, and to be kept open and unobstructed, and in good condition, at their joint expense."   On the 15th of the same October, Wingate granted to Herman K. Fowle a right in the passage way as appurtenant to five houses on the easterly side thereof " for all necessary purposes connected with the five houses," and also the right of making drains, &c.

On the same 15th of October, Wingate conveyed to Holman, who had purchased lot No. 6 in July preceding, the fee of the passage way, by a deed which described it as " a certain parcel of land now used as a passage way," giving its boundaries, and adding, " the same being a passage way laid out by

myself through land lying on the north side of May Street," subject to the rights in the same granted to McLane and Towle. May Street is now Revere Street.

The evidence reported shows that the passage way had been for a long time freely used by the owners and occupants of lot No. 6, before Holman purchased ; but without right, and by permission only. From the time when Holman bought it, he allowed his tenants to use it as a passage way to lot No. 6, and laid down water pipes through it from May Street to the houses thereon ; and at the time when Holman conveyed to Pickering, and for ten years afterward, it was constantly used by the occupants of lot No. 6, without objection.

The parol evidence of Holman's intention when he purchased of Wingate, upon which it is found as a fact that he purchased the passage way with the purpose of using the same as a way to and from lot No. 6 owned by him, is only competent as explaining the acts done by him while he owned both estates, and before he conveyed to Pickering. It has a legal tendency to prove that the use of the passage way by his tenants was by intention and design, and not from mere indifference or inadvertence on his part. It is clearly not competent to show by parol that it was his intention to include a right in the passage way in his grant to Pickering. So far as the parol evidence tended to show the existing condition of the property at the time of the grant to Pickering, and thus aided in the construction of that grant by showing to what subject matter it applied, it was competent and material ; but only to that extent.

We have then to decide whether, under the law as settled in this commonwealth, any right in the passage way passed from Holman to Pickering as appurtenant to the grant of lot No. 6. If it did, it was wholly by implication, because there is nothing expressed in the deed which would include it.

The whole doctrine in relation to grants by implication of easements as appurtenant to a conveyance of land has recently been examined in *Carbrey* v. *Willis*, 7 Allen, 364 ; and we cannot see that, consistently with the rule declared in that case, the claim of the plaintiff in this suit can be supported.

To raise the implication, the easement must be *de facto* an-nexed to the estate conveyed at the time of the grant, and must be necessary to its enjoyment in the condition in which it ther is. A distinction was suggested in *Johnson* v *Jordan*, 2 Met 234, between the reservation of an easement by the grantor in the estate which he grants, for the benefit of land which he re-tains;.and the grant of an easement in other land which he owns, for the benefit of that which he conveys; and it was inti-mated that there might be an implied grant of an easement under circumstances where there would be no implication that an easement was reserved. The case before us presents the case of an easement claimed under a grant, which is to be con-strued most strongly against the grantor. The grant will include whatever the grantor had power to convey, which is reasonably necessary to the enjoyment of the principal subject of the grant. But the difficulty is, that the evidence, or the finding of facts upon it, does not show that the use of the passage way was necessary to the enjoyment of lot No. 6. It was highly conven-ient, and Holman, while he owned both, used it, as he had a right to do, in connection with his estate. He bought it for the purpose of so using it. But the question still remains, did he intend to sell the easement with the estate? He had a right to retain it if he chose, and his deed, in terms, shows no intention to the contrary. He testifies that he intended, when he bought the passage way, " to build up the Primus Hall estate, and make a different thing of it." But it does not appear that he buil' upon the estate, or did anything to make the passage way more necessary to the estate than it was before he had any right in it The purchase of the passage way gave him a piece of land, for ever to be kept open as a passage way for the use of other abut ters, and therefore of little value or use except as a way, and he gave a nominal consideration for it. He put down water-pipes through it, and to that extent made the use appurtenant to the Primus Hall estate. It was held as early as a case in Moore, 682, *Brown* v. *Nichols*, that a conduit to conduct water to a house will pass as appurtenant to a grant of the house. But making an easement in the passage way appurtenant cannot

carry with it another; nor can calling the land which he purchased by metes and bounds "land used as a passage way," or describing it as "being a passage way," in the deed by which it was conveyed to him, make it any less a separate estate to be used and enjoyed, retained or sold, as any other piece of land could be, at its owner's pleasure. It was called a passage way in Wingate's deed to Holman obviously because rights of way in it had been already granted to McLane and Towle.

He then sells the principal estate by metes and bounds, without any reference to a right in the passage way in controversy, but with an express grant of an easement in another passage way. His deed recites that the premises conveyed are the same estate conveyed to him by Clark by the deed of July 1846; and by that deed no right in the passage way in controversy was included. He refers, "for a full view and description of the premises hereby conveyed," to the recorded plan; and upon that plan no passage way like that which the plaintiff claims is shown. This last consideration is one entitled to great weight. When a plan is referred to, as containing a description of an estate, what appears upon the plan is to be as much regarded, in ascertaining the true description of the estate, and the intent of the parties in making it, as if it was recited in the deed. *Morgan* v. *Moore*, 3 Gray, 319. The passage way which the deed describes is shown upon the plan, but the land where a passage way is now claimed is merely marked as land belonging to a third person. As far as the plan can show a negative, it excludes the existence of such a passage way as appurtenant to the estate conveyed. And it is not a way necessary to the enjoyment of the estate conveyed in its condition at the time of the conveyance.

The question reserved must therefore be answered in favor of the defendants.